IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CARLOS B. GUZMAN CRUZ, ) <br> ) <br> *Petitioner*, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> *Respondent*. ) <br> ) | Criminal Action No. 1:09-cr-216 <br> Civil Action No. 1:13-cv-43 |

### MEMORANDUM OPINION

This matter comes before the Court on Petitioner Carlos Guzman Cruz's Motion to Vacate under 28 U.S.C. § 2255. Dkt. No. 159. The motion has been fully briefed by the parties. On February 13, 2015, the Court held an evidentiary hearing to judge the credibility of Petitioner's claim that his trial counsel had not communicated the government's plea offers to him. For the reasons set forth below, as well as those stated in open court, the motion is denied.

### I. Background

This criminal case arose out of the acts of three Mara Salvatrucha, also known as MS-13, gang members. Petitioner and his co-defendants, Aguilar Orantes and Dennis Gil Bernardez, were members of the Normandie Locos Salvatrucha ("NLS") clique of MS-13 in northern Virginia. On October 6, 2008, Orantes and Bernardez were involved in the shooting of former "Crips," rival gang members. Two of the three targets of the shooting, David Kuk and Dalton Beck, sustained serious injuries but survived. The shootings were in retaliation to Kuk and Beck's previous attack on Orantes, which in turn was retaliation for an attack on Kuk by Orantes and other MS-13 members.

The same day of the shootings, Petitioner told Jorge Palacios—a former MS-13 member turned FBI informant in Richmond—that he wanted to purchase a "clean" gun to take to Northern Virginia. The gun was to be exchanged for two guns that had been used in the shooting. Palacios told Petitioner that he had contacts who could take guns that had been used in crimes and dispose of them abroad. On October 7, 2008, in a call recorded by Palacios, Petitioner spoke with Bernardez about the shootings as well as the need to dispose of a gun that had been used in other shootings. On October 31, 2008, Petitioner brought the guns to Richmond from Northern Virginia. On November 1, 2008, he met with Palacios and indicated that one of the guns was the same one that had been used in the October 6 shootings. Palacios then purchased the gun from Petitioner.

On May 6, 2009, the defendants were charged in a fifteen-count indictment. Dkt. No. 1. Petitioner was charged with three counts: one count of Illegal Alien in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(5) (Count 15) and two counts of Accessory after the Fact in violation of 18 U.S.C. § 3 (Counts 13 and 14). On July 29, 2009, a jury convicted him on all three counts. On October 30, 2009, the Court sentenced Petitioner to 144 months' imprisonment with credit for time served.

On November 3, 2009, Petitioner filed a timely notice of appeal and requested the Court to appoint him new counsel. The Court granted his request. On April 21, 2010, Petitioner filed a motion for a new trial based on newly discovered evidence, which was denied. On July 18, 2011, the Fourth Circuit affirmed Petitioner's convictions and this Court's denial of the motion for a new trial.

On January 7, 2013, Petitioner filed the motion to vacate currently before the Court. Dkt. No. 159. The government filed its response in opposition (Dkt. No. 168), to which Petitioner

replied. Dkt. No. 182. Upon an initial review of the pleadings, the Court determined that an evidentiary hearing was necessary on the issue of whether Petitioner's counsel communicated his adamant desire to plead guilty to either the government or the Court before trial. The Court subsequently appointed Lavonda Graham-Williams to represent Petitioner at the hearing. On February 13, 2015, the Court held the hearing, which included testimony from Petitioner and his two trial counsel. The matter is now ripe for disposition.

## II. Legal Standard

Petitioner seeks to vacate his sentence pursuant to 28 U.S.C. § 2255. A petitioner is entitled to relief under 28 U.S.C. § 2255 only in the extraordinary event that he demonstrates either: (1) a lack of jurisdiction by the convicting court; (2) constitutional error; or (3) legal error so grave as to be "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (citation and internal quotation marks omitted). It is well settled that bare, conclusory allegations are insufficient to entitle a petitioner to relief under § 2255. *See, e.g., United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013), *cert. denied*, 135 S. Ct. 47 (2014).

Petitioner's sole argument for relief is based upon his Sixth Amendment right to effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated a two-part standard for evaluating claims of ineffective assistance. The first prong requires a showing that counsel failed to provide reasonably effective assistance—in other words, that counsel's conduct fell below an objective standard of reasonableness in light of the circumstances at the time. *Id.* at 687–88. This prong presents a high burden because the Court must "presume[] that the defendant's counsel rendered objectively effective performance." *United States v. Dyess*, 478 F.3d 224, 237 (4th Cir. 2007). The second prong requires the

defendant to prove prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693–94. Under this standard, the Court will evaluate Petitioner's claim.

### III. Discussion

As stated above, Petitioner seeks relief based on the alleged ineffective assistance of his trial counsel, Mr. Drewry Hutcheson. Specifically, he alleged in his motion that Mr. Hutcheson "forced" him to go to trial in spite of his insistent desire to plead guilty. Pet'r's Mem. Supp. Mot. Vacate ("Mot. Vacate") ¶ 25. Petitioner also stated that he "repeatedly informed defense counsel that he desired to plead guilty," and that Mr. Hutcheson would reply that "he was 'working on it.'" *Id.* ¶ 19. Petitioner claims that "clearly informed defense counsel that his only desire throughout the trial phase was to receive a three-point reduction in offense level for acceptance of responsibility ... and defense counsel would then instruct Movant that he 'thought he could do better' . . . ." *Id.* at ¶ 20. Petitioner averred that he made multiple calls to defense counsel's office to communicate his desire to plead guilty, but "there was no reply." *Id.* at ¶ 22. He also asserted that he mailed counsel a letter addressed to the Court regarding his intent to plead guilty, but that "no action was taken at that point or since in changing the plea as directed in the letter . . . ."[1] *Id.* at ¶ 20.

Given the disputed issue of fact central to the allegations, which turn on Petitioner's credibility, this Court ordered an evidentiary hearing because, if proven, counsel's conduct would constitute objectively unreasonable assistance. *United States v. Brannon*, 48 F. App'x 51, 54 (4th Cir. 2002) ("Erroneous advice during the plea negotiation process or the failure of a defense attorney to timely inform his client of a plea offer constitutes unreasonable professional

---

[1] Notably, at the evidentiary hearing, Petitioner stated that nearly all of the preceding allegations are untrue and requested that they be stricken from the record. Evidentiary Hr'g Tr. at 3–7.

assistance."); *see also Paters v. United States*, 159 F.3d 1043, 1046 (7th Cir. 1998) (holding that a petitioner must demonstrate that, but for the counsel's deficient performance in recommending against a plea, "there is a reasonable probability that he would have accepted the alleged proposed plea agreement").

At the hearing, the Court heard testimony from Petitioner, his trial counsel Mr. Hutcheson, and another attorney Gregory Hunter, who had been appointed to represent Petitioner on a discrete issue at trial due to a conflict between a trial witness and Mr. Hutcheson. Petitioner first testified that he wished to remove numerous allegations from his petition, including that he "demand[ed] to plead guilty" and that he "called [his] lawyer repeatedly to demand to plead guilty." Evidentiary Hr'g Tr. at 5. He then clarified that the basis of his ineffective assistance claim was Mr. Hutcheson's failure to inform him that he could "plead guilty without having to testify." *Id.* at 6. He testified that the only option that was presented to him by trial counsel, besides going to trial, was to plead guilty and cooperate with the government in the form of testifying against his co-defendants.

On cross-examination, Petitioner admitted that Mr. Hutcheson had visited him in jail before trial and shown him the government's evidence against him, including the recordings from the confidential informant. He also testified that, during the time he was facing trial, he "personally knew that [he] was guilty of the weapons [charge], but not of the conspiracy." *Id.* at 11. He later elaborated that he did not believe he was guilty of the conspiracy charge because he "didn't know what conspiracy was." *Id.* at 13. After a short rebuttal, Petitioner rested.

The government then proceeded with the testimony of Petitioner's trial counsel, Mr. Hutcheson. He testified to having met with Petitioner "ten or fifteen" times at the jail before trial. *Id.* at 19. During these meetings, Mr. Hutcheson showed Petitioner the "particularly

damaging evidence" against him, including both audio and visual recordings by the confidential informant in which Petitioner discussed the transfer of the guns—the conduct at the heart of the charges against him. *Id.* at 21. Mr. Hutcheson testified that he informed Petitioner that "the case was very strong against him" based on this evidence, and "advised him on a number of occasions, as I do most clients ... [that] it would be in his best interests to plead guilty and try to minimize the damage when it came to sentencing." *Id.* He then stated that Petitioner *expressly* told him he did not want to plead guilty. He could not recall what reason Petitioner gave for wanting to proceed to trial, but said that "a lot of clients are stubborn" and "may not realize how hard it is to receive an acquittal at trial." *Id.* at 22.

Mr. Hutcheson then testified as to his discussions with Petitioner about his various options related to pleading guilty. Using the sentencing guidelines as the starting point, Mr. Hutcheson showed Petitioner what his sentence might look like if he received levels off his calculated guideline range simply by pleading guilty. He then advised him of the opportunity to have his sentence reduced even further upon the government's motion if "you have information that the government finds helpful and you want to cooperate." *Id.* at 22–23. Mr. Hutcheson's two handwritten notes, presented as government exhibits 1 and 2, corroborate his testimony. He described one of the notes as follows:

> Exhibit 2 is some notes that I made with some Guidelines estimates. And it says, assault, dangerous weapon or deadly weapon, racketeering, assault with intent to murder. References a Guidelines section. And then I just have some Guidelines calculations. Base level plus some for bodily injury. Minus six for accessory after the fact, which is part of that lesser role that we were talking about earlier. And then it says minus three, equals a 28. ... [T]he minus three is what shows that I was contemplating and explaining to Mr. Guzman Cruz how you can plead guilty and get the acceptance level.

*Id.* at 24–25. The other note, in which he wrote "other uncharged people = cooperation opportunities—[third] person at shooting," was apparently written during a debrief with the government. *Id.* at 25; Gov't Ex. 1. Mr. Hutcheson explained that he had circled those words to remind himself to tell Petitioner "that he had an opportunity in front of him ... to go farther than simply pleading guilty and getting acceptance of responsibility, but also to go the next step and cooperate and ... hopefully get a further sentence reduction if that's what he wanted to do." *Id.* at 25–26.

The government then called Mr. Hunter, who had been appointed to represent Petitioner solely for the purpose of cross-examining one of the government's witnesses, as there was a conflict between Mr. Hutcheson and that witness. Mr. Hunter testified that, on the eve of trial, he went to the jail with Mr. Hutcheson to speak with his new client for the first time. On the subject of plea discussions, he testified that "part of the discussion [between Petitioner and Mr. Hutcheson] was about the difference between two points ... for acceptance of responsibility and the third point, and that that third point [for timely notifying authorities of his intent to plead guilty] was probably not possible at this point." *Id.* at 32–33. He also stated that Petitioner never expressed a desire to plead guilty in his presence. At the conclusion of Mr. Hunter's testimony, the government rested. Petitioner did not present any rebuttal evidence. During closing arguments, Petitioner's counsel confirmed that the essence of his claim is that "it was not made clear to him that he was able to enter a plea without cooperation." *Id.* at 35.

After hearing the evidence, it is clear to this Court that Petitioner was advised of his ability to plead guilty without having to cooperate with the government. Petitioner's testimony—that his trial counsel failed to advise him of the standard option, available to all criminal defendants, of pleading guilty without an agreement to cooperate—is simply not

credible. The Court finds trial counsel's version of the facts, which has been corroborated by his handwritten notes as well as by a third party, much more convincing. The Court also finds that Petitioner's ultimate decision not to plead guilty was based on his persistent belief that he was innocent of the conspiracy charge as well as his unwillingness to cooperate with the government. Even at the hearing, Petitioner testified that he did not believe he was guilty of the conspiracy charge during the relevant period because he "didn't know what conspiracy was." *Id.* at 13. In light of the above, the Court concludes that Petitioner has failed to meet his burden to show that his trial counsel rendered objectively unreasonable assistance. *See Strickland*, 466 U.S. at 687; *Brannon*, 48 F. App'x at 54.

IV. **Conclusion**

For the foregoing reasons, Petitioner's claim of ineffective assistance of counsel under 28 U.S.C. § 2255 will be denied.

An appropriate Order shall issue.

April 27, 2015

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge